IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RICKEY PRYOR                                                                                    PLAINTIFF

V.                                        NO.  5:09-cv-00392 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                    DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, Rickey Pryor,[1] seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits and supplemental security income (SSI) benefits.  Both parties have submitted briefs (doc. 27, 30).  For the reasons that follow, the Court[2] **affirms** the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act and regulations and, therefore, is not entitled to disability insurance benefits or SSI benefits.

I.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole.  42 U.S.C. §§ 405(g), 1383(c)(3); *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[1]Spelled as "Ricky" in some places in the record.

[2]The parties have consented to the jurisdiction of the United States Magistrate Judge (doc. 13).

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). In its review, the Court should consider evidence supporting the Commissioner's decision as well as evidence detracting from it. *Wildman*, 596 F.3d at 964. A decision will not be reversed merely because substantial evidence would have also supported a contrary outcome, or because the Court would have reached a different conclusion. *Id.*

II.

In his application documents and at the hearing before the ALJ, Plaintiff alleged inability to work since May 25, 2006, due to "flat feet," high blood pressure, and pain in his hands, feet, knees, lower back, ankles, and right shoulder. (Tr. 49-68, 124-25, 139.) He testified that leg pain and stiffness prevented him from standing for longer than two to three hours on a bad day, but said he could stand about four to five hours on a good day. (Tr. 58.) He said he used a cane for balance and to "keep some of the pain out," and wore braces on his legs. (Tr. 52, 56.) He said he had problems reaching up with his right arm due to prior surgery, and with swelling in his thumb and fingers on his left hand. (Tr. 54-56, 62-65.) He said he could sit four or five hours but had trouble getting up from a sitting position. (Tr. 53, 58.) Plaintiff was forty-six years old at the time of the hearing and has a high school education. (Tr. 46.) He has past work as a lift operator, poultry hanger and packager, machine feeder, and saw sharpener. (Tr. 46-49, 69-70, 125, 141-47.)

Under the applicable law, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  The regulations provide a five-step sequential process to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work.  *Id.*

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  The ALJ next determined, at step two, that Plaintiff suffered from severe impairments of degenerative disc disease, degenerative joint disease, obesity and hypertension, but that none of his impairments, individually or in combination, equaled a step-three listed impairment as contained in the regulations.  At step four, the ALJ found that Plaintiff was unable to perform his past relevant work, but retained the residual functional capacity (RFC) to perform a limited range of sedentary work with certain restrictions, *i.e.*, lifting and carrying ten pounds occasionally and less than ten pounds frequently; no overhead reaching with the right arm; occasional handling/fingering; standing and walking up to two hours in an eight-hour day; sitting six hours in an eight-hour day; pushing/pulling up to twenty pounds occasionally and ten pounds frequently; no climbing of ladders, ropes and scaffolds.  At step five, after consulting the Medical-Vocational Guidelines, taking testimony from a vocational expert, and considering Plaintiff's age (younger individual), education, work experience and RFC, the ALJ found that there were a significant number of jobs in the national economy which Plaintiff could perform.  *See* 20 C.F.R. §§ 404.1569, 416.969; 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.29.  The ALJ

thus concluded that Plaintiff was not disabled. (Tr. 8-19.) Plaintiff pursued administrative review with no success, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7.)

Plaintiff argues that the ALJ erred (1) in failing to accord adequate weight and properly evaluate the opinions of Plaintiff's treating physicians and examining consulting physician, and (2) in formulating an RFC which is inconsistent with the opinions of Plaintiff's physicians and the vocational expert testimony. Because they overlap, both arguments are addressed in the below analysis.

III.

In deciding whether a claimant is disabled, the ALJ is required to consider every medical opinion received from physicians and other medical sources, must resolve conflicts among the various opinions, and may reject any conclusions that are inconsistent with the record as a whole. *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). Medical opinions are to be weighed based on the following factors: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is related to the source's area of specialty; (6) and other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d).

In his decision, the ALJ stated that he had considered all opinion evidence in accordance with the requirements of §§ 404.1527 and 416.927, and the applicable rulings. (Tr. 17.) He discussed the medical evidence in detail, specifically addressing the treatment

records and findings of: Plaintiff's primary care physician, Dr. Christine Scott[3] (Tr. 12, 14, 15-16, 17); his treating podiatrist, Dr. John P. Thrash (Tr. 11-12, 14); an examining, consultative physician, Dr. Atiya N. Waheed (Tr. 14-15); and non-examining state agency medical consultants Dr. Ronald Crow and Dr. Jerry Thomas (Tr. 13-14, 16).

    A.    <u>Dr. Scott</u>.

Plaintiff asserts that the ALJ disregarded Dr. Scott's opinion that he was prevented from working due to his chronic pain and improperly discounted her observations and opinions even though they are supported by her treatment notes and other evidence in the record. From May 2006 to November 2008, Plaintiff received general medical care from Dr. Scott and others at Jefferson Comprehensive Care System, Inc. (JCCS) for various ailments, including hypertension, ankle pain, swelling and pain in his left hand, bilateral arthritis in his knees, and pain in his right shoulder and lower back. (Tr. 293-98, 327-34, 346-48.) On March 24, 2009, Dr. Scott completed a "Residual Functional Capacity Form" in which she assessed bilateral knees arthritis, use of foot braces, chronic right shoulder pain and limited range of motion, chronic lower back pain, thumb and finger pain on the left hand, and mild swelling and limited range of motion in the first digit on the left hand. She said the assessment was based on her "experience, treatment and examination as his treating physician." She also expressed the opinion that, due to his "chronic pain," Plaintiff was prevented from working eight hours per day, five days per week, on a regular, sustained basis. (Tr. 378-80.)

---

[3]Referred to in some records as Dr. Christine Reyes.

The ALJ summarized the records from JCCS. (Tr. 12.) He specifically addressed Dr. Scott's RFC opinion but said it was "not given considerable weight" because it was inconsistent with her own examination, other objective evidence, Plaintiff's activities of daily living, and his recent employment. (Tr. 17.)

A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). The ALJ can properly discount a treating physician's opinion if it is inconsistent with the physician's own clinical treatment notes, or is inconsistent with and unsupported by the medical evidence as a whole. *Id.* at 930. Moreover, opinions that a claimant is "disabled" or "unable to work" concern issues reserved for the Commissioner and are not the type of opinions which receive controlling weight. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Giving such opinions controlling weight would "in effect, confer upon the treating source the authority to make" disability determinations. *Id.* (quoting SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996)).

First, it is clear that, in formulating Plaintiff's RFC, the ALJ did not disregard the underlying conditions documented by the medical evidence from Dr. Scott. As stated, the ALJ accounted for the impairments to a significant degree by finding that Plaintiff could perform a restricted range of sedentary work. Sedentary jobs primarily involve sitting with normal breaks at two-hour intervals, but may require occasional lifting of no more than ten pounds at a time and occasional walking and standing, for no more than two hours out of an eight-hour day. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996). In addition to the usual criteria for sedentary work, the ALJ included

further restrictions of no overhead right-arm reaching, only occasional fingering and handling, pushing/pulling up to twenty pounds occasionally and ten pounds frequently, and no climbing.  (Tr. 13.)

Moreover, the ALJ did not err in declining to give greater weight to Dr. Scott's specific RFC findings or her opinion that Plaintiff was unable to work.  No medical records show that, at the time Dr. Scott completed the RFC form in March 2009, she was providing any medical treatment to Plaintiff.  (*See* Tr. 348 [showing last examination by Dr. Scott was 08/11/08].)  In discounting the opinion, the ALJ noted the inconsistency between Dr. Scott's documentation that Plaintiff reported pain and swelling in his left hand, thumb and fingers, and her objective examination on that date showing no swelling or redness in the left thumb and mild swelling in the first digit of his left hand.  (Tr. 379.)  Her treatment notes further show that the last time Plaintiff had complained of similar swelling had been about one year earlier, in March 2008.  At that time, he had a swollen third digit on the left hand and limited range of motion, a nonsteroidal anti-inflammatory medication was prescribed, and he was "much improved" at his follow-up visit in April 2008.  (Tr. 330-31.)  Before then, he had complained of swollen hands in April 2006 (Tr. 230, 235-36, 225, 228); left thumb pain and swelling in May 2006 (Tr. 298); and, in May 2007, a swollen second digit on the left hand, along with tenderness and limited range of motion (Tr. 334).  These records indicate that, despite his claims of recurring hand problems, his symptoms subsided with time and conservative treatment and did not warrant referral to a specialist or any limitation on activities by Dr. Scott.  Additionally, as noted by the ALJ, Plaintiff's complaints primarily involved the left hand, and he testified that he is right-handed.  (Tr. 14, 17, 65.)

For his other complaints of musculoskeletal pain in his ankles, knees, shoulder and lower back, Dr. Scott prescribed Ibuprofen or anti-inflammatory medications. Plaintiff was referred to a podiatrist for his foot/ankle problems. (Tr. 297, 328-30, 347.) This evidence supports the ALJ's conclusion that, although Plaintiff's degenerative joint and disc diseases could be expected to produce "mild chronic pain or discomfort," the medical records did "not show repeated hospitalization or aggressive forms of therapy ... that would be expected if he experienced severe, persistent and unremitting pain." (Tr. 16, 295-96, 329-30.) *See Clevenger v. Social Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (ALJ may reasonably discredit claimant's testimony of disabling pain if claimant takes only over-the-counter pain medications).

The ALJ also found that Dr. Scott's opinion of total disability was inconsistent with Plaintiff's activities of daily living and recent employment. The ALJ noted that Plaintiff engaged in a "fairly wide range of activities," including preparing his own meals, doing light housework, shopping for groceries, paying bills, playing dominos and cards at least three times a week, attending church, and driving with rest periods. (Tr. 16.) These statements are supported by Plaintiff's testimony and the forms he completed in connection with his application for benefits. (Tr. 59-60, 161-63.) The extent of a claimant's daily activities is a proper consideration in evaluating the credibility of his subjective complaints and in determining functional restrictions imposed by his impairments. *See, e.g., Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008).

The ALJ noted, and the record shows, that Plaintiff had engaged in work activity from 2006 to 2008, but that it did not rise the level of substantial gainful activity. (Tr. 10.)

At the hearing in January 2009, Plaintiff testified that he had tried to work two days a week from August to December 2008, but could no longer do the job due to leg pain. The law is clear that working part-time or full-time is inconsistent with a claim of disabling pain and limitations. *See* 20 C.F.R. §§ 404.1571, 416.971 (even if work during a period of alleged disability was not substantial gainful activity, it may show that claimant is able to do more work than he actually did); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity."); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (part-time work is inconsistent with claim of disabling pain); *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) (part-time work supported ALJ's conclusion that claimant could perform light work on a sustained basis).

Furthermore, although Dr. Scott's clinical records show she was aware that Plaintiff was working, she never instructed him not to work or to decrease or eliminate any work activities. (Tr. 297 [05/25/06; Plaintiff reported working at a job where he stood on concrete for the whole day, which caused ankle pain; Dr. Scott approved him to "return to work"]; 296 [2/22/07; Plaintiff reported it was "hard for him to do a full day's work" due to ankle pain]; 330 [04/03/08; Plaintiff complained of back pain when "at work and in certain positions wiping down tables"]; 348 [08/11/08; Plaintiff reported doing janitorial work].)

The ALJ did not err in declining to give considerable weight to Dr. Scott's opinions regarding the extent and impact of Plaintiff's impairments.

Plaintiff contends that the hypothetical questions posed by the ALJ to the vocational expert should have included a limitation on use of the left hand, as warranted by the medical evidence from Dr. Scott. The Commissioner can utilize the testimony of a vocational expert to satisfy his burden of showing that jobs exist in significant numbers

which a person with the claimant's RFC and vocational factors can perform. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2), 404.1566(e), 416.966(e). Such testimony constitutes substantial evidence only when "based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008). However, the hypothetical need include only those impairments or restrictions that are supported by the record and that the ALJ accepts as valid. *Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007).

As stated, the RFC assessed by the ALJ and incorporated into his hypothetical questions to the vocational expert did include a restriction to "occasional" fingering and handling. (Tr. 13, 71-72.) When the expert indicated during the hearing that such an individual could perform the jobs of matrix and finishing inspectors, the ALJ and Plaintiff's attorney carefully questioned the expert about the handling/fingering requirements of those jobs. (Tr. 70-76.) The expert stated that he was "very familiar" with the jobs and confirmed that they would not require more than occasional fingering or handling, stating, "Most inspectors at the semiskilled sedentary level are looking at very small parts and they only pick up a representative sample; they don't pick up every part that [is] coming down the line and it is primarily done visually[.]" (Tr. 73-75.) Plaintiff testified that he was right-handed, and that he primarily used his right hand in his past work. (Tr. 56, 65.) Many of his reported activities (preparing meals, light housework, paying bills, playing dominos and cards three times a week) would require at least occasional fingering and handling. Although he testified that "every morning," his thumb and fingers were swollen, and that his thumb would be swollen "all day" two or three times a week (Tr. 55, 64), the medical records show that he sought medical treatment for the condition several times in April and

May 2006, once in May 2007, and twice in March and April 2008, and that each time his symptoms responded to treatment and did not prevent him from performing his daily activities and some degree of work activity. Dr. Scott's records, set forth above, show that his complaints of difficulty performing work tasks related only to his legs and back. The ALJ did not err in declining to include further restrictions in the hypothetical due to Plaintiff's hand problems.

  B. <u>Dr. Thrash</u>.

Plaintiff also argues that the ALJ afforded insufficient weight to the findings of Dr. Thrash, a podiatrist who treated Plaintiff for foot and ankle problems in 2006 and 2007. (*See* Tr. 299-303.) Plaintiff asserts that the ALJ's statement indicating his bilateral foot problems are managed by the AFO (ankle-foot orthosis) is inconsistent and contradictory to Dr. Thrash's opinion and medical records. He also states that the ALJ "ignores" Dr. Thrash's statement that Plaintiff was limited in his ability to ambulate and perform activities of daily living.

Dr. Thrash first saw Plaintiff in June 2006 for "midfoot pain." (Tr. 303.) A CT scan showed "pseudo-joint or extra/anomalous joint between the tarsal bone and calcaneus within the tarsal sinus" which was "most probably the source of patient's suspected coalition," as well as "[d]egenerative changes with osteophytic spurring anteriorly at the tarsal navicular articulation." (Tr. 302.) AFO supports were made. At Plaintiff's last follow-up in April 2007, Dr. Thrash noted Plaintiff's report that he was "persistently experiencing symptoms and intolerance to activity particularly standing or walking for greater than one hour in duration." He stated that Plaintiff was being "managed appropriately with the AFO," but it was "only partially and marginally reductive of the patient's symptoms to bilateral foot,

subtalar joint, and ankle." Dr. Thrash stated that Plaintiff was "still limited in his ability to ambulate and perform activities of daily living, as well as activities required of any manual labor," and had "persistent daily pain and limitation of motion." (Tr. 300.)

In discussing Dr. Thrash's records and findings, the ALJ simply restated Dr. Thrash's observation that Plaintiff's foot and ankle problems were being "managed appropriately" with the AFO brace. (Tr. 14, 300.) Contrary to Plaintiff's assertion, the ALJ specifically noted Dr. Thrash's documentation that Plaintiff was limited in his ability to ambulate and perform activities of daily living or manual labor. (Tr. 12.) The ALJ obviously took this into account in restricting Plaintiff to sedentary work. At the hearing (almost two years after his last visit to Dr. Thrash), Plaintiff testified that he could stand two to three hours on a bad day and four to five hours on a good one. (Tr. 58.) In light of this testimony, the medical evidence that the AFO provided some measure of support, and Plaintiff's continued ability to engage in daily activities and some work activity, the ALJ did not err in declining to assess further restrictions.

Plaintiff asserts that hospital emergency room records support the opinions of Dr. Scott and Dr. Thrash. Records from March to July 2006, discussed by the ALJ, show multiple visits to the emergency room for complaints of, among other things, swollen knees and swollen hands. (Tr. 11, 14, 189-257, 267-77.) Records show additional visits in December 2008 due to knee pain and swelling. (Tr. 349-77.) However, on all these dates, Plaintiff was examined, treated, released and advised to follow up with his regular physicians. Arthritis was diagnosed. (Tr. 199, 209, 213, 224, 236, 277, 359, 366, 376.) While these records are generally consistent with the findings of Dr. Scott and Dr. Thrash, they do not necessarily undermine the ALJ's decision that Plaintiff remained capable of

performing sedentary work.  Furthermore, the hospital records are inconsistent with Dr. Scott's opinion that Plaintiff was unable to perform any work activity.  As noted by the ALJ, on June 3, 2006, the hospital's examining physician instructed Plaintiff to not work for only two days, on March 30, 2006, the physician indicated he could return to "full duty" on April 1, and on June 22, 2006, the physician indicated he could return to "full duty" the following day.  (Tr. 14, 206, 220, 252-53.)

    C.    <u>Dr. Waheed</u>.

Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Waheed, who performed a consultative general physical examination in July 2007 at the request of the Social Security Administration.  (*See* Tr. 307-15.)  Plaintiff argues that the ALJ "selectively omitted" portions of Dr. Waheed's report that tended to show disability.

In discussing Dr. Waheed's report (Tr. 14-15), the ALJ noted that he had diagnosed severe degenerative arthritis in the left knee, arthritis in the right knee, arthritis in both hands, arthritis in the ankles, and hypertension.  (Tr. 314.)  He noted Dr. Waheed's remark that Plaintiff had difficulty bending his knees and walking, as well as the observation that Plaintiff had limited range of motion in his knees and hands but that, although he reported having right shoulder surgery, his range of motion in his shoulders was normal.  (Tr. 308, 311-12.)  The ALJ also noted Dr. Waheed's report that Plaintiff used a cane to walk during the examination.  (Tr. 308, 312.)

Dr. Waheed also reported that Plaintiff had problems walking on heel and toes, as well as difficulty squatting and arising from a squatting position. (Tr. 312.)  While the ALJ did not specifically mention these two observations, this does not mean he did not consider them.  An ALJ is "not required to discuss every piece of evidence submitted."  *Wildman*,

13

596 F.3d at 966. Moreover, an ALJ's "failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* Given the ALJ's many references to other findings and statements in Dr. Waheed's report, it is "highly unlikely that the ALJ did not consider and reject" the unmentioned statements as not dispositive of the disability determination in light of the rest of the record. *Id.* In any event, these functional restrictions were adequately accounted for in the ALJ's limitation to a restricted range of sedentary work.

D.     Dr. Crow and Dr. Thomas.

Plaintiff argues that the ALJ's opinion improperly gives more weight and credibility to the non-examining state agency medical consultants, Dr. Crow and Dr. Thomas. The regulations recognize that state agency medical consultants and program physicians are "highly qualified physicians ... and other medical specialists who are also experts in Social Security disability evaluation" and that, as such, "administrative law judges must consider" their opinions. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I) (emphasis added). However, "the opinions of non-examining sources are generally, but not always, given less weight than those of examining sources." *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008); *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

The ALJ addressed both opinions. (Tr. 13-14, 16.) First, he rejected the February 2007 opinion of Dr. Crow that Plaintiff had the physical RFC to perform light exertional work. (Tr. 283-90.) The ALJ found Dr. Thomas's July 2007 RFC assessment to be "more in line" with the ALJ's RFC rating. (Tr. 316-23.) Dr. Thomas determined that Plaintiff's medical evidence supported the following RFC findings: the ability to lift and/or carry ten pounds occasionally and less than ten pounds frequently; the ability to stand and/or walk two hours in an eight-hour workday; the ability to sit about six hours in an eight-hour

workday; unlimited ability to push and/or pull; and no postural, manipulative, visual, communicative or environmental limitations. (Tr. 317-20.) In making this determination, it appears that Dr. Thomas reviewed the medical evidence through July 2007 from Dr. Thrash, Dr. Scott and Dr. Waheed, in addition to hospital and other records. (Tr. 325-26.)

In formulating his RFC assessment, the ALJ imposed even further restrictions than those assessed by Dr. Thomas, i.e., in the areas of overhead reaching, fingering/handling, pushing/pulling, and climbing. This record shows that the ALJ properly considered the state agency opinions and gave them appropriate weight.

IV.

After a careful review of the evidence and all arguments presented, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 2nd day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE